Action by Henry Weber against Edward Wallerstein and others. From an order appointing a temporary receiver, defendants appeal. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Theodore Baumeister and Frank Gardner, for appellants.

Edwin H. Risley, for respondent.

SPRING, J.  The respondent has commenced this action as a stockholder of the corporation of Edward Wallerstein & Co., charging that its assets have been fraudulently diverted, and seeks to have them restored to the corporation.  This court has held the complaint states the cause of action mentioned.  The allegations of the complaint are all set forth on information and belief.  A motion was made by the plaintiff upon the complaint and the demurrers thereto for the appointment of a temporary receiver of the corporation.  The defendants appeared and by affidavits positively denied the charges of fraud and the dissipation of the corporate assets.  In addition the entire transactions which are set out in the complaint on information and belief are explained in these affidavits, and, if the facts are correctly stated therein, the defendants are exculpated of the misconduct imputed to them.

In this situation there should be no receiver appointed pending the action, or, at least, until there is some urgent necessity for that drastic remedy.  The statement of a cause of action alone does not warrant the granting of this relief.  The receiver is authorized to take possession and control of all the corporate assets, and his incumbency will necessarily oust the corporation of the management of its affairs.  Something beyond the mere unsupported statement of the plaintiff made on information and belief in the general allegation of a complaint should appear to warrant the appointment, where the allegations are explicitly denied.  Kieley v. Barron, etc., 87 App. Div. 317, 84 N. Y. Supp. 306; Platt v. Elias, 101 App. Div. 518, 91 N. Y. Supp. 1079.

The order should be reversed, with $10 costs and disbursements of this appeal to each of said defendants appealing separately, and the motion denied, with $10 costs.  So ordered.  All concur.

---

## In re NIAGARA, L. & O. POWER CO.

### Appeal of FLARKE et al.

(Supreme Court, Appellate Division, Fourth Department.  March 7, 1906.)

1. EMINENT DOMAIN—STATUTORY PROVISIONS—RIGHT TO IMMEDIATE POSSESSION—ENTRY ON MAKING DEPOSIT.

 Code Civ. Proc. § 3380, provides that where, in condemnation proceedings, it appears to the satisfaction of the court that public interests will be prejudiced by delay, it may direct that plaintiff be permitted to enter immediately upon the real estate upon depositing with the court the sum stated in the answer as the value of the property.  Section 3382 provides that, where the mode or manner of conducting any of the proceedings in condemnation is not expressly provided for by law, the court shall have

power to make all necessary orders to carry into effect the object and in-
tent of the law.    *Held*, that where defendants' answer denied the estimate
placed upon the property by plaintiff, but contained no statement of its
value, and defendants' counsel declined to make any estimate, an order
permitting plaintiff to immediately enter into possession on the deposit
of a sum determined upon by the court was proper.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Eminent Domain,
§§ 200-203.]

2. SAME—CONSTITUTIONALITY OF STATUTE.

Code Civ. Proc. § 3380, declaring that when it appears to the satisfac-
tion of the court, in condemnation proceedings, that the public interests
will be prejudiced by delay, it may direct that plaintiff be permitted to
enter immediately upon the lands in question on depositing in court the
sum stated in the answer as the value of the property, is not violative of
Const. art. 1, § 6, as a taking of property without compensation.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Eminent Domain,
§ 201.]

3. SAME—PUBLIC USE—WHAT CONSTITUTES.

The furnishing of electricity for the use of the inhabitants in a thickly
settled and extensive territory for illuminating purposes, and for the use
of extensive street surface railroads, constitutes a "public use" within the
meaning of that phrase in relation to eminent domain.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Eminent Domain,
§ 80.]

4. SAME—PUBLIC INTERESTS—PREJUDICE BY DELAY.

Code Civ. Proc. § 3380, provides that in condemnation proceedings, if
it appears to the satisfaction of the court that public interests will be
prejudiced by delay, it may direct that plaintiff be permitted to imme-
diately enter the lands sought to be acquired, etc.    *Held*, that where it
appeared that a corporation seeking to condemn lands intended to fur-
nish electricity for the use of inhabitants in a thickly settled and exten-
sive territory for illuminating purposes and for the use of extensive street
surface railroads, and that it had contracted for early delivery of power,
and had contracted to receive a large quantity of power which was ready
for delivery, and that the corporation was actively prosecuting the build-
ing of its line, there was a public interest which would be prejudiced
by delay.

Appeal from Special Term, Niagara County.

Application by the Niagara, Lockport & Ontario Power Company
to acquire by condemnation lands of Rosalia Flarke and others.    From
an order permitting plaintiff to immediately enter upon the lands de-
scribed in the petition, defendants appeal.    Affirmed.

The plaintiff is an electric transportation corporation duly organized pur-
suant to the laws of the state of New York, and is engaged in constructing a
line for the transmission of electricity from the city of Buffalo, eastwardly, to
the central part of the state.    Maps of the route have been filed, surveys
made, nearly all the land necessary for the right of way, and which com-
prises a strip 200 feet in width, has been acquired in the counties of Erie,
Niagara, Orleans, and Monroe, and much of the actual work of construction
has been performed.    The appellant, Rosalia Flarke, owns land in the town
of Lockport, in the county of Niagara, 1¾ acres of which the plaintiff is seek-
ing to acquire.    Proceedings were commenced by plaintiff for the condemna-
tion of the land mentioned in August last.    An answer was interposed by the
appellant, denying nearly all the allegations of the petition, also containing
affirmative defenses, and the issues were, in the latter part of September, re-
ferred to a referee and the proceeding is still undetermined.    Early in October
the present proceeding was commenced and an order granted at Special Term
permitting the plaintiff to enter immediately upon the premises of the defend-

ant described in the petition upon depositing with the court the sum of $500, to be applied toward the payment of any award which may be made to her, including the costs and expenses of the proceeding. The money has been deposited in pursuance of the order. Other facts appear in the opinion.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

George F. Thompson, for appellants.

R. E. Drake and John H. Leggett, for respondent.

SPRING, J. The petition alleges that the value of the property to be condemned is $355.30, and the affidavit of Mr. Scoby states that the land is assessed at $30 an acre and is worth not to exceed $25 an acre. The answer of the defendant specifically denies the estimate placed upon the property by the plaintiff, but does not contain any statement of its value. The appellant's contention is that the court consequently had no jurisdiction to designate or to ascertain a sum upon the payment of which temporary possession would be accorded it of the defendant's property. The original proceeding is the usual one to acquire property for a public use, where the plaintiff is unable to agree with the owner for its purchase, and seeks to have the compensation ascertained by commissioners as prescribed in section 3360 of the Code of Civil Procedure. The answer raised issues to be tried. There are two provisions of the Code of Civil Procedure pertaining to the possession of property by a condemning plaintiff, and which were incorporated in the Code of Civil Procedure by chapter 95, p. 266, Laws 1890. Section 3379 applies where the party is already in possession of the property sought to be condemned. Section 3380, which governs in the present instance, is applicable where the plaintiff is not in possession, but an answer has been interposed, "and it appears to the satisfaction of the court that the public interests will be prejudiced by delay." Thereupon the plaintiff may be given the immediate possession of the property, to be taken temporarily and for the public use specified, "upon depositing with the court the sum stated in the answer as the value of the property." Subsequent provisions relate to the application of the money upon the termination of the proceeding, the payment of costs, providing, also, for a judgment for deficiency if the sum deposited is inadequate to meet the award.

The position of the defendant is that inasmuch as the object of this section is to enable a corporation or person, for the use of the public, to deprive the owner temporarily, but against his will, of his own property, it must receive a strict construction; and, as the answer omitted to contain any statement of the value of the property, the order is erroneous. We think this interpretation of the section is too narrow. The interposition of an answer often results in delaying for some time the termination of the proceeding to condemn. The owner of land who is endeavoring to obtain an exorbitant sum from the plaintiff for his premises may interpose an answer and block the prosecution of the work in the face of the paramount necessity for its accomplishment. To guard against this unfair obstruction of the work, the Legislature came to the rescue by the enactment of the two

sections mentioned. They are similar in the object to be attained and in the manner of accomplishment, except, where the plaintiff is in possession, security in lieu of the payment of money may be directed by the court upon granting the order for the continuance of possession. By section 3380, as well as by the preceding section, the Legislature had two cardinal purposes in view: First. Where the prosecution of the work contemplated by its charter was demanded by the public interests and prejudicial delay was likely to ensue from the interposition of an answer, a remedy was afforded the plaintiff to acquire immediate possession pending the proceeding. Second. The rights of the owner were sufficiently protected by the payment of the sum which he claimed under oath was the fair value of the property of which he was to be deprived. The mode of procedure prescribed is consequently beneficial to both parties. The right of the company to condemn being established and the prejudice to public interests by delay appearing, the court will make the order, which, on the one hand, will enable the work to be carried on, and, on the other, will insure compensation to the owner for the property taken. The reason for taking the value specified in the answer as the sum to be paid is to insure the defendant the full worth of his premises beyond a peradventure. If he intentionally or otherwise fails to state any value at all, the court is not thereby prevented from granting the relief "where the public interests will be prejudiced by delay." In construing the section, we must keep in mind that the basic ground for the relief is the needs of the public. If the deposit made is entirely adequate, the defendant is fully safeguarded, and that is precisely what the statute intended. It is of little importance how the sum to be paid is arrived at, if the object designed is attained and the defendant is assured the full sum which may eventually be awarded him.

The counsel for the appellant admitted upon the oral argument of this appeal that the justice at Special Term endeavored to ascertain from him what he regarded as adequate compensation to his client. But the counsel declined to make any estimate, preferring to rest his opposition upon the proposition that the failure to state any value in the answer barred the court from granting relief to the plaintiff. So, upon the argument of the appeal, counsel declined, upon invitation of the presiding justice, to inform the court whether he complained that the sum deposited was insufficient, reiterating the reason for his refusal. He also admitted that there had been no attempt on the part of the plaintiff to delay or obstruct the pending condemnation proceeding. We must assume, consequently, the concrete controlling fact that the sum deposited is ample to pay the defendant any award which will be made to her and protect her in every respect. The aim of the statute has therefore been accomplished.

Section 3365 does not require the defendant in condemnation proceedings to state the value of the property in his answer. It is not conceivable that the Legislature in the light of this fact would leave a loophole so that a contentious owner at any time might render nugatory the relief provided for in section 3380 by simply omitting to allege the value of the property sought to be taken. Section 3382

of the Code of Civil Procedure is in point in so far as it denotes the purpose of the Legislature to invest the courts with general authority to make effectual "the object and intent" of the condemnation law. If the answer does not state the value of the property, the "manner of conducting * * * the proceeding therein is not expressly provided for by law." Section 3382. The only specific authority to compel the owner to give up temporary possession of his property is founded upon the allegation of value in the answer. But the intent of the Legislature was to permit the plaintiff to obtain possession upon the payment of a sufficient sum to compensate the owner fully; and, if the conduct of the defendant, whether in good faith, inadvertently, or maliciously renders a strict compliance with section 3380 impossible, the general authority conferred upon the court by section 3382 is sufficiently comprehensive to enable the obvious purpose to be accomplished. As was said in People ex rel. Wood v. Lacombe, 99 N. Y. 43, at page 49, 1 N. E. 599, at page 600:

"In the interpretation of statutes, the great principle which is to control is the intention of the Legislature in passing the same, which intention is to be ascertained from the cause or necessity of making the statute, as well as other circumstances."

While the condemnation law by chapter 95, p. 266, Laws 1890, was made a part of the Civil Code, yet section 3380 in its present form is a new provision. The right, however, to obtain temporary possession of the owners' land by a railroad company upon the payment of a sufficient sum, where pending the proceeding for condemnation it developed that the title of the defendant was defective, had been operative for some time. Section 24, c. 606, p. 747, Laws 1875. The pith of that statute composes section 3380. The Legislature in re-enacting the substance of the law did not intend to vest an obstructing owner with full power to render its operation ineffective. He cannot prevent the adoption of that part of the statute which inures to the benefit of the public by refusing to avail himself of that portion which is beneficial to him. Nor is section 3380 violative of section 6, art. 1, of the State Constitution. The property of the defendant is not taken from her without compensation. The essence of the section permitting possession to be acquired is that the owner must be assured the payment of the full value of the land of which he is deprived. It has long been held that payment to the owner personally is not an essential prerequisite to the taking of the land by right of eminent domain, providing only compensation is made certain. Bloodgood v. Mohawk & H. R. R. Co., 18 Wend. 9, 31 Am. Dec. 313.

The plaintiff was created pursuant to chapter 722, p. 1806, Laws of 1894. Its sphere of operation was originally confined to the counties of Erie, Niagara, and Orleans, but since its incorporation its certificate has been amended, whereby it is claimed the range of its territory and the scope of its business have been enlarged. Its purposes as disclosed in section 8 of the act mentioned are the supplying of wholesome water and electricity to the towns, villages, and cities along its route, and the generation, transmission, and distribution of electricity for a large number of objects enumerated in said section. It is given

authority to take water from Niagara river (section 10), to use the streets and highways and lay pipes therein (section 11), to acquire land by purchase or condemnation proceedings (sections 12 and 13). Its power is coincident with that of other corporations organized for the profit of the incorporators, but designed also for the benefit of the public.

The plaintiff has already entered into a contract for the construction of a canal, which is in process of building, and which, when completed, will be of sufficient capacity to generate 200,000 electrical horse power. It has entered into an agreement with a Canadian power company whereby it is to receive a large quantity of electric power, a considerable portion of which is ready for delivery. It has also entered into an agreement with a construction company for the delivery of power to be used in the operation of certain street surface railroads, which are named in the moving papers, and the affidavits show that it is important that this power be delivered early during the present year. The contract calls for the delivery of this power at an early date, and the plaintiff is actively prosecuting the building of its line. The transmission of the electricity is at high voltage and along wires ninetenths of an inch in diameter, which are supported by steel towers 50 feet in height. To transmit the electricity of the extraordinary high voltage of from 10,000 to 60,000 volts in wires along the streets or highways would be dangerous and impracticable. The extent of the business contemplated, including, as it does, the furnishing of electricity for the use of the inhabitants in a thickly settled and extensive territory for illuminating purposes, and for the use of extensive street surface railroads, we think constitutes a public use within the definition of that comprehensive term. Pocantico Water Works Co. v. Bird et al., 130 N. Y. 249-258 et seq., 29 N. E. 246; Matter of Burns, 155 N. Y. 23, 49 N. E. 246.

The fact also sufficiently appears that "the public interests will be prejudiced by delay" if the defendant is allowed to block the plaintiff in the fulfillment of the plan for which it was organized and retard the furnishing of electricity or water to the inhabitants along its route, or in supplying electrical power for the operation of railroads and for other necessary purposes which may fairly be for the benefit of the public. The order should be affirmed.

Order affirmed, with $10 costs and the disbursements of this appeal. All concur.