397; Matter of Burdick, 27 Misc. Rep. 298, 58 N. Y. Supp. 759. Judge Dunmore said, in the Town of Whitestown Case, supra:

"The statute contemplates that that question of fact shall be decided by the commissioners, and not by the court. Kelsey v. King, 32 Barb. 410; Dunham v. Village of Hyde Park, 75 Ill. 374. It has been held that the court can no more reverse the finding of those tribunals than of a jury in a given case. Paine v. Leicester, 22 Vt. 49; Hartwell v. Armstrong, 19 Barb. 166."

While it is a grave question whether the town of Chester should be put to the great expense, occasioned by the acquisition of the right of way for this alteration and by the construction of this remote highway, considering that only a few taxpayers of the town are beneficially affected by the change, and while this court might have found against the proposition upon the evidence, if called upon to determine that question in the first instance, nevertheless, in the light of the decisions of the courts in such cases, it would be manifestly improper for the court to arbitrarily set aside the decision of the commissioners in this case. It cannot be said that the report is not supported by the evidence or that the same is against the weight of the testimony.

We now come to the consideration of the question as to whether the applicant has lost the right to continue this proceeding because of the sale of her farm. It was shown that the applicant, by an instrument in writing filed with the commission, released all claim for damages to her property, and that in the conveyance of her premises she actually reserved the lands released for highway purposes, and, for the purposes of this proceeding, she is still the owner of the land upon which the altered highway is proposed to be constructed. Therefore the proceeding is not affected by the conveyance, and the cases cited by the respondent have no application to the facts in this case.

I can find no sufficient legal reason for interfering with the report of the commissioners.

The motion to vacate it is therefore denied, and motion to confirm it is granted, with costs.

---

(68 Misc. Rep. 626.)

KIRBY v. STATE.

(Court of Claims of New York. August, 1910.)

1. STATUTES (§ 185*)—CONSTRUCTION—IMPLIED POWERS.
    Where a statute requires an act to be done, the right to do everything necessary to complete the act is conferred by implication.
    [Ed. Note.—For other cases, see Statutes, Cent. Dig. § 264; Dec. Dig. § 185.*]

2. STATUTES (§ 181*)—CONSTRUCTION—INTENT OF LEGISLATURE.
    The intent of the Legislature must control the interpretation of a statute, which intent may be ascertained from the necessity of the enactment as well as from other circumstances, and, when a case is brought within the intent of a statute, it is within the statute, even though not definitely expressed, and the court has implied authority to carry out such intent.
    [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 259–263; Dec. Dig. § 181.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. STATES (§ 93*)—CONTRACTS.

     The state is liable for contracts made by its officers which are within their general constitutional or statutory powers, and express authority need not be conferred to bind the state, but may be implied from the power to do any act reasonably necessary for the exercise of the power given.

     [Ed. Note.—For other cases, see States, Cent. Dig. § 90; Dec. Dig. § 93.*]

4. STATUTES (§ 224*)—CONSTRUCTION—HARMONIZING EXISTING LAWS.

     It is the duty of the court in interpreting statutes to adopt such a construction as will harmonize existing laws, and in case of conflict, will not produce injustice to those who have acted in good faith under one of them, and a construction which will produce the least public inconvenience and will not hamper the state officials in the proper discharge of their public duties when acting for the welfare of the state in the protection of its interest.

     [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 300, 302, 306; Dec. Dig. § 224.*]

5. ATTORNEY GENERAL (§ 6*)—CONTRACTS—POWER OF ATTORNEY GENERAL TO EMPLOY COUNSEL.

     Const. art. 5, § 1, creates the office of Attorney General, and section 2 provides for his election by the people. Section 6 provides that the powers and duties of the several officers in the article (including the Attorney General) shall be such as now are or hereafter may be prescribed by law. Executive Law (Consol. Laws, c. 18) § 62, subdiv. 1, provides that the Attorney General shall prosecute and defend all actions in which the state is interested. Section 65 provides that the Attorney General may employ such additional counsel as may be necessary to assist in the transaction of the legal business, and that such counsel shall be paid from the treasury a reasonable fee upon the certificate of the Attorney General. Finance Law, § 35, provides that a debt shall not be contracted without appropriation, and that a state officer shall not contract indebtedness on behalf of the state or assume to bind the state in an amount in excess of money appropriated or otherwise lawfully available. *Held*, that the power of the Attorney General under Executive Law, § 65, to employ counsel in the transaction of legal business is not limited by Finance Law (Consol. Laws, c. 56) § 35, nor is the power of his successor in office to continue the employment of the counsel, and such counsel may recover from the state the value of his services, though there may have been no special appropriation at the time sufficient to pay him.

     [Ed. Note.—For other cases, see Attorney General, Cent. Dig. § 5; Dec. Dig. § 6.*]

6. STATES (§ 184*)—COURT OF CLAIMS—JURISDICTION—CLAIMS BASED ON EXPRESS CONTRACT.

     A claim of counsel for services rendered on employment by the Attorney General being based on an express contract, the Court of Claims has jurisdiction thereof, though the claim has previously been rejected by the Attorney General on the ground that there was not a sufficient appropriation to pay it.

     [Ed. Note.—For other cases, see States, Dec. Dig. § 184.*]

     Claim by Gustavus T. Kirby against the State. Judgment for claimant.

     Kirby & Wood, for claimant.
     Edward R. O'Malley, Atty. Gen., for the State.

     MURRAY, J. This claim is filed by the above-named claimant to recover for services rendered the state of New York as special counsel to the state in what was commonly known as the 80-cent gas lit-

igation, at an agreed and stipulated compensation of $100 a day; and more particularly for 29 days of such service, in the months of January and February, 1907, which were spent by the claimant as the special counsel of the state, and representing it, before Arthur H. Masten, Esq., as the special master, who was appointed by the Circuit Court of the United States to hear and determine the issues therein which were referred to him.

In the summer of the year 1907 the Consolidated Gas Company brought a suit in the Circuit Court of the United States for the Southern District of New York, against Julius M. Mayer as the Attorney General of the State of New York, the State Commission of Gas and Electricity, and others. This suit was brought for an injunction for the purpose of testing the constitutionality of the so-called 80-cent gas law, which had been previously passed by the state Legislature. The issues raised by the bill of complaint and the answer were referred by a circuit judge of said court to Arthur H. Masten, Esq., as a special master to hear and determine. The case was one of public interest and of great importance, in which a speedy determination was requested by the Circuit Court and was also sought by the parties interested. Therefore protracted and almost daily sessions were held by the said special master, in order to facilitate and expedite the decision of the case.

The claimant was an electrical engineer, as well as a counselor at law, and possessed the technical knowledge, experience, and ability which it was thought desirable and necessary one should have to represent the state in a litigation of this character; and, after a conference with the Governor of the state, the then Attorney General, Mr. Mayer, designated him and retained his services as special counsel for the state in such litigation at an agreed compensation of $100 a day. The claimant thereafter rendered services to the state as special counsel in such litigation and under said agreement to the first part of February, 1907.

On December 31, 1906, the term of office of Mr. Mayer as Attorney General expired; and on January 1, 1907, he was succeeded in that office by Attorney General Jackson.

There was appropriated by the Legislature, by chapter 578 of the Laws of 1907, the sum of $47,000 to pay and liquidate the expenses and indebtedness incurred by Attorney General Mayer in connection with this litigation to the expiration of his term of office on December 31, 1906, and of this appropriation the claimant received a sum of money which he accepted in payment for such services as he had rendered to the state as such counsel to January 1, 1907.

When Mr. Jackson assumed the Attorney Generalship, January 1, 1907, the so-called 80-cent gas case was still unfinished before the special master; and, under the "pressure" referred to, the master and the counsel therein were holding almost daily sessions and endeavoring to reach a speedy determination of the case. About this time, or shortly thereafter, there was introduced into the Legislature a bill in behalf of the Attorney General's office and, among other matters, appropriating money for the payment of counsel designated or em-

ployed pursuant to the provisions of the executive law. The bill passed and became known as chapter 9 of the Laws of 1907.

After Mr. Jackson assumed the office of Attorney General, he, as such Attorney General, retained and continued the employment of claimant as such special counsel for the state in said litigation until the conclusion of the taking of the testimony before the said special master; and it was agreed that the rate of compensation was to be in accordance with the agreement which the claimant had with Attorney General Mayer. The claimant under such retainer and agreement performed the 29 days' service in the months of January and February, 1907, in attendance upon such special master in said litigation on behalf of the state as its special counsel, as is set forth in the claim in this proceeding.

About the time of the conclusion of these services, the claimant rendered a bill, or requested payment for them from the Attorney General. These services were not paid for, on the ground, as the claimant understood, that the Attorney General had no money available to pay for them. Subsequently to this there was introduced into the Legislature a bill appropriating the sum of $2,900 to pay and compensate the claimant for these services. The bill passed both Houses of the Legislature but failed to obtain the Governor's signature and become a law, and the claimant was relegated to his rights before this tribunal.

The state offered no evidence disputing the designation or employment of the claimant, nor as to the skill and ability with which he acted for the state, nor as to the worth and value of the services which he performed and rendered to the state.

The state urges upon the consideration of the court that the Attorney General in office could not, in July, 1906, make an agreement binding upon the state, in that at that time there was not a specific appropriation theretofore made sufficient to pay the obligation incurred; that Mr. Mayer, the Attorney General then in office, could not by his designation, employment, and agreement bind his successors in office; that the state is not liable for the services rendered and the work done on the ratification of this agreement by the successor in office, Attorney General Jackson, nor is the continued retainer or employment of the claimant by Attorney General Jackson binding on the state because, at the time of making such ratification and such re-employment or designation, the Attorney General did not have funds in his hands sufficient or available to pay the amount that might be incurred. The state relies principally on section 35 of the finance law (Consol. Laws, c. 56), which is as follows:

"Indebtedness not to be contracted without appropriation. A state officer, employé, board, department or commission shall not contract indebtedness on behalf of the state, nor assume to bind the state, in an amount in excess of money appropriated or otherwise lawfully available."

The evidence as to what money was "otherwise lawfully available" is somewhat indefinite and unsatisfactory. Attorney General Mayer stated that he had funds in the summer of 1906, and chapter 9 of Laws of 1907 became a law February 9th of that year by which there

was appropriated for Attorney General Jackson the sum of $15,000 to meet expenses similar to this.

In the discussion of the law applicable to this case, let us first ascertain what are the duties, powers, and responsibilities of the Attorney General as the legal representative of the state.

The office of Attorney General is a constitutional one, and as such the incumbent is elected by the people. Const. art. 5, §§ 1, 2. The Constitution also provides:

"The powers and duties * * * of the several officers in this article mentioned (including the Attorney General) shall be such as now are or hereafter may be prescribed by law." Const. art. 5, § 6.

The Constitution having provided that the powers and duties of the Attorney General shall be such as now are or hereafter may be prescribed by law, the inquiry naturally is: What powers are given, and what duties are prescribed by law in reference to the Attorney General?

Section 62 of the executive law (Consol. Laws, c. 18), describing the general duties of the Attorney General, provides the Attorney General shall:

"(1) Prosecute and defend all actions and proceedings in which the state is interested, * * * in order to protect the interests of the state. * * * (7) He may agree that a referee, to be appointed in an action to which the state is a party, shall receive such compensation at such rate per day as the court in the order of reference may specify." Executive Law, § 62, subds. 1, 7.

"The Governor or Attorney General may designate and employ such additional attorneys or counsel as may be necessary to assist in the transaction of any of the legal business mentioned in section sixty-two of this chapter, and such attorneys or counsel shall be paid from the treasury a reasonable fee, upon the certificate of the Governor or Attorney General, the amount to be audited and allowed by them or to be paid by the Attorney General out of the costs recovered by him." Executive Law, § 65.

The Constitution and the executive law above quoted confer upon the Attorney General the power, and impose on him the duty and the obligation, to defend actions and proceedings in which the state is interested, in order that the interests of the state may be protected. And when, in a litigation like the 80-cent gas case, involving an assault upon, and testing the constitutionality of, a law passed by the Legislature, the state is sued and made a party to the action, it was the apparent duty of the Attorney General to appear and defend the action in order to protect the interests of the state; and that duty, and the command of the law which imposed it upon him, carried with it the implied authority, right, and means of making a suitable proper, and efficient defense. He was called upon to defend the state when sued, and to protect its interest according to the emergency occasioned by the litigation.

The rule is that, when an act is to be done, the right to do everything necessary to complete the act is conferred by implication. Hall v. Supervisors, 13 Abb. N. C. 427.

The principle which is to control the interpretation of a statute is the intent of the Legislature, which may be ascertained from the necessity of the enactment, as well as from other circumstances.

People ex rel. Heiser v. Gilon, 76 Hun, 346, 27 N. Y. Supp. 704; Wood v. Lacombe, 99 N. Y. 43, 1 N. E. 599; Matter of Niagara Lockport & Ontario Power Co., 111 App. Div. 686, 97 N. Y. Supp. 853; People ex rel. Gress v. Hilliard, 85 App. Div. 507, 83 N. Y. Supp. 204.

Where a case is brought within the intent of a statute, it is within the statute even though not definitely expressed, and the court has implied authority to carry out the intent of the Legislature. Topham v. Interurban St. R. Co., 96 App. Div. 323, 89 N. Y. Supp. 298; Hurst v. City of New York, 55 App. Div. 68, 67 N. Y. Supp. 84; Atlas Refining Co. v. Smith, 52 App. Div. 109, 64 N. Y. Supp. 1044.

If I am right in my view that the Attorney General has power to retain such additional counsel as may be necessary to assist in the defense of any suit brought against the state, according to the emergency thereof, then the employment by the Attorney General of the claimant herein was binding on the state.

The state cannot act itself; it must act through its proper officers, like a corporation, which acts through its agents. Reese, Ultra Vires, § 223; 1 S. & R. Neg. (5th Ed.) § 249; State of Indiana v. Woram, 6 Hill, 33, 40 Am. Dec. 378.

A state is liable for contracts made by its officers which are within their general constitutional or statutory powers. Express authority need not be conferred to bind the state; it may be implied from the power conferred to do any act reasonably necessary for the exercise of the power given. 26 Am. & Eng. Ency. of Law (2d Ed.), 481. 483, and cases cited.

In People v. Stephens, 71 N. Y. 527, 550, Judge Allen, speaking for the court, says:

"The state is not, in tutelage, as one incapable of acting sui juris, but has capacity to act in all matters by its representatives and agents, and is bound by the acts and admissions of its duly appointed and recognized officers and representatives, acting within the general scope of their constitutional powers, whether ministerial or executive. In the absence of fraud or collusion, the acts of public officers, within the limits of the authority conferred upon them, and in the performance of the duties assigned them in dealing with third persons, are the acts of the state, and cannot be repudiated. Neither can the state allege infancy, incompetency, or disability to avoid the effects of the official acts of its agents. This is of necessity; for, as the state can only act by its duly constituted authorities, there would be no safety in dealing with the state, if it were otherwise, and each succeeding officer could repudiate the acts, avoid the contracts, rescind settlements, and reclaim payments made by his predecessor. The Legislature may and does regulate the power of its officers, and the power can only be exercised within the prescribed limits; but the Legislature does not negotiate contracts. Its powers are legislative, and every other power is delegated to other branches of the government." Also Danolds v. State, 89 N. Y. 36, 44, 42 Am. Rep. 277; People ex rel. Forest Commission v. Campbell, 22 App. Div. 170, 174, 48 N. Y. Supp. 183; People ex rel. Grannis v. Roberts, 45 App. Div. 145, 152, 61 N. Y. Supp. 148.

In People v. Santa Clara Lumber Co., 126 App. Div. 616, 618, 110 N. Y. Supp. 280, the court says:

"The office of the Attorney General is an ancient one, and, * * * from the earliest times, such officer, as the chief legal officer of the state, has performed certain duties and exercised certain authority which in terms may not definitely be prescribed by statute."

The office of the Attorney General has long been accustomed to and has exercised the right to employ special counsel when they were needed, or it was deemed necessary in special cases.

It has been held that a long-continued course of action by public officers under a statute has weight in construing it. Matter of Street Opening, 12 Misc. Rep. 526, 33 N. Y. Supp. 594; Matter of Washington Street Asylum & P. R. R. Co., 115 N. Y. 442, 22 N. E. 356; Woolsey v. Funke, 121 N. Y. 87, 92, 24 N. E. 191.

It is the duty of the courts in interpreting statutes to adopt such a construction as will harmonize existing laws—in case of conflict to adopt such a construction as will be fair and equitable and not produce injustice to those who have acted in good faith under one of them, a construction which will produce the least public inconvenience, and will not hamper the officials of the state in the proper discharge of their public duties when acting for the welfare of the state in the protection of its interest, and for its benefit.

Let us now consider the provisions of section 35 of the state finance law.

It has been held that a construction of a statute is to be avoided which is liable to produce mischief or promote injustice. Hayden v. Pierce, 144 N. Y. 512, 39 N. E. 638.

In Lake Shore & M. S. R. Co. v. Roach, 80 N. Y. 339, 344, the court says:

"The lawmakers cannot always foresee all the possible applications of the general language they use, and it frequently becomes the duty of the court in construing a statute to limit their operation so that they shall not produce absurd, unjust, or inconvenient results not contemplated or intended. A case may be within the letter of the law and yet not within the intent of the lawmakers, and in such a case a limitation or exception must be implied."

"Statutes framed in general terms frequently embrace things which are not within the intent of the lawmakers, and sometimes things within such intent are not within the letter. Hence, in construing statutes, it has been frequently held that a thing which is within the letter of the statute is not within the statute unless it be within the intent of the lawmakers." Delafield v. Brady, 108 N. Y. 524, 529, 15 N. E. 428, 429.

In Jacobson v. Mass, 197 U. S. 11, 25 Sup. Ct. 358, 49 L. Ed. 643 (see Ed. Law Jour. April 26, 1910), the court say:

"All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or absurd consequences. It will always, therefore, be presumed that the Legislature intended exceptions to its language which would avoid results of that character. The reason of the law in such cases should prevail over its letter" —and cases cited.

Attorney General Cunneen, giving his opinion to the board of railroad commissioners, advised the board that they had the power to determine the necessity of a change of a railroad crossing under section 63 of the railroad law (Laws 1890, c. 565) as added by Laws 1897, c. 754, § 1, even though the money to pay for the state's portion of it was not at the time of such determination available for the purpose, saying:

"I think that the Legislature intended under section 65 of the railroad law and did, by the language employed in that section, make an exception if such

an exception was needed to section 35 of the state finance law." Report Atty. Gen. for 1904, p. 248; also opinion Atty. Gen. Davies in Report Atty. Gen. for 1900, p. 183.

The provisions of the state finance law do not make the act of the officer who violates its provisions illegal and void. It may be that an officer who willfully transgresses and seeks negligently or improvidently to bind the state is guilty of a misdemeanor. But it does not declare that the acts of the officer or the contracts of a state official, made in good faith for the state's welfare in the protection of its interest and for its benefit, are void.

The purpose of the state finance law was, undoubtedly, to prevent officials from doing acts, or heads of departments from entering into contracts, which the Legislature could readily foresee would become necessary and make provision for the payment thereof. The purpose of the Legislature was to protect the interest of the state and prevent officials from improvidently and improperly entering into obligations for the payment of money without previous legislative sanction, express or implied.

A Legislature, in making appropriations for a current year for the Attorney General's office, could not foresee the exact amount required for all unanticipated emergencies and contingencies and provide specifically for the payment of each of them. It appropriated an amount for the contingent expenses of the office, and left the Attorney General clothed with the authority of the executive law to safeguard the interest of the state according to the necessities of each case as it arose. The Attorney General, being charged with a positive duty of defending actions brought against the state, could not justify a refusal to perform such duty on the ground that the Legislature had made no appropriation to meet an emergency which it could not foresee. If such were the case, the state might suffer great loss and the Attorney General would be derelict and culpable. Neither could the Legislature properly provide for the defense of an action not brought while it was in session, requiring the employment of special and technical counsel.

Assuming the contention of the state is correct, that the provision of the finance law is applicable, and that, at the time of claimant's employment, the Attorney General's office had no sum of money specially appropriated for the payment of the claimant's services, the Legislature, by chapter 578 of the Laws of 1907, appropriated money from which the claimant was paid for his services to January 1, 1907. And thereafter another bill was introduced and passed both Houses, appropriating money to compensate him for the 29 days of service which he rendered in the months of January and February, 1907. Surely, this was a ratification of the contracts made by the Attorneys General, acting for the state. It recognized the validity of the acts of the Attorneys General, the liability of the state for the same, and sought to pay and recompense the claimant.

In O'Hara v. State of New York, 112 N. Y. 152, 153, 19 N. E. 659, 662, 2 L. R. A. 603, 8 Am. St. Rep. 726, the court say:

"The Legislature has undoubted power to authorize state officers and agents to contract debts under certain circumstances against the state, and, as we

have before said, it can legalize such as have been theretofore illegally contracted by a subsequent exercise of its legitimate legislative power. * * * It would certainly be strange and would subject the state to great loss and damage, if in case of emergency, and when legislative authority could not be previously obtained to authorize the same, that its servants should be powerless to obtain labor and materials necessary to save it from the destruction of its property, and be compelled to lose advances made in reliance upon the honor and integrity of the state, and believing that they would be subsequently reimbursed for expenditures made for its benefit. It cannot, we think, be said that the constitutional provision was intended to disable the state from paying for property or valuable services received by it from individuals because they were furnished under stress of an imminent necessity without previous authority of law." Also Sage v. Schuyler, 79 N. Y. 189, 200, 201.

The suit of the Consolidated Gas Company was commenced in the summer of 1906. The state was one of the party defendants, and the constitutionality of its laws was sought to be tested. The action was one of great importance, public interest was aroused, and a speedy determination of the validity of the law was demanded. The special master was under instructions from the Circuit Court to hasten the conclusion of the case and was proceeding with extraordinary speed. The intricacies of the litigation required the employment of counsel of technical knowledge, experience and ability, who could give and devote his whole time to the suit. The state was sued. The Attorney General was required by law to defend the action in the interest of the state. He was called upon at that time to act "under stress of an imminent necessity." The Legislature was not in session, and an unforeseen and unprovided for emergency had occurred. He made a contract with the claimant in good faith, which has not been criticised as not being favorable and beneficial to the state. The claimant, under such agreement, rendered valuable services to the state, protected its interest, and the litigation ultimately resulted in the establishment of the validity of the law. The laborer is worthy of his hire; and the state, having accepted and received the benefit of the claimant's skill and services, should in fairness and equity pay their just worth.

I am therefore of the opinion that the provision of the executive law, authorizing the Attorney General in a proper case to employ counsel and bind the state to pay the reasonable value for services so rendered, should not be overridden unless by clear and explicit implication of statute, and that it was not the intention of the Legislature that the provisions of the finance law quoted should be applicable to such a case as the one at bar.

The defense that Attorney General Jackson could not ratify the agreement made by his predecessor with the claimant, or continue his employment as such special counsel, until a specific appropriation had been made to pay him, I do not think, under the views I have above expressed, is well founded.

When Attorney General Jackson entered upon the duties of his office, January 1, 1907, the 80-cent gas case was then unfinished. It was still pending before the special master, who was proceeding with the greatest celerity to its termination. The claimant was in the midst

of the trial, solely representing the state, and was conversant with all the details and intricacies of the litigation, which was nearing its end. The proceedings could not then have been suspended to procure other counsel and time allowed to familiarize himself with all the details of the case; nor could the state's interest be properly abandoned to await legislative appropriation. The same duty and obligation which rested upon Attorney General Mayer fell upon Attorney General Jackson, and he continued the retainer and employment of the claimant upon the same terms as to compensation as he had been employed by Attorney General Mayer.

The claimant, under this new or ratified contract of employment with Attorney General Jackson (if the same was needed), continued to render services as such special counsel for the state, and gave and performed the 29 days of service in representing the state before the special master until the termination of the taking of the testimony before him.

A bill was introduced into the Legislature appropriating money for the Attorney General to pay counsel retained under the executive law soon after Attorney General Jackson assumed the duties of his office. This bill became a law February 9, 1907, and is known as chapter 9, Laws 1907. The claimant not having been paid out of this appropriation, another special bill was subsequently introduced appropriating specifically for his benefit the sum of $2,900, to compensate him for these services. This bill passed both Houses but failed to receive the Governor's signature and become a law, for the reasons stated by the claimant in his evidence.

The office of the Attorney General is a continuing one. Sovereignty never dies. The state always lives, and the official who is the Attorney General represents the state in legal proceedings no matter who the individual incumbent for the time may be. It would make sad havoc in the legal business of the state and in judicial proceedings if each incumbent of the Attorney General's office could reverse by a caprice or otherwise the legal acts of a predecessor. Courts will, therefore, respect the official legal acts of the office itself without regard to the individual who may for a time be the incumbent thereof.

In People ex rel. Lardner v. Carson, 78 Hun, 544, 29 N. Y. Supp. 619, the court at Special Term struck from the calendar a case which was noticed for trial by a succeeding Attorney General who had not been substituted for his predecessor by whom the action had been commenced. The court at General Term in reversing the order say:

"The duty here prescribed is an official one and pertains to the office of Attorney General and not to the person who at any one time chances to be the incumbent of the office; a duty which goes with the office and devolves in turn upon each incumbent as he succeeds thereto. The officer of the state who noticed this cause was to all intents and purposes the same officer who originally brought the action; namely, the Attorney General of the state, upon whom is charged the duty of bringing and maintaining these actions.

"It is contrary to the theory and to the spirit of the statute that each successive incumbent of the office of Attorney General should require to be individually substituted for his predecessor by an order of the court before he

can proceed with the prosecution of those actions in behalf of the people which were pending when he succeeded to the office."

This court has jurisdiction of the claim. The Attorney General lawfully made and entered into an agreement with the claimant for the performance of work, labor, and services at a stipulated price. It is therefore an action on an express contract. It was submitted to the Attorney General for his audit, and the audit was refused on the ground that at that time there were not sufficient funds in the Attorney General's hands to pay the same. The claim is, therefore, within the provisions of section 264 of the Code of Civil Procedure, as amended by Laws 1908, c. 519, which provides:

"But the court has no jurisdiction of a claim submitted by law to any other tribunal or officer for audit or determination except where the claim is founded upon an express contract and such claim, or some part thereof, has been rejected by such tribunal or officer."

In accordance with the views above expressed, I am of the opinion that the claimant is entitled to recover and should be awarded judgment, and judgment is directed to be entered in favor of the claimant herein and against the state.

Judgment for claimant.