ALGONQUIN GAS TRANSMISSION COMPANY v.
GEORGE S. COLEMAN ET AL.

ALGONQUIN GAS TRANSMISSION COMPANY v.
GEORGE W. LANGE ET AL.

ALGONQUIN GAS TRANSMISSION COMPANY v.
LEO A. NELSON ET AL.

HON. SAMUEL MELLITZ, A JUDGE OF THE SUPERIOR COURT

Memorandum filed August 23, 1951.

*Day, Berry & Howard,* of Hartford, for the Plaintiff.

*Birmingham & Kennedy,* of Hartford, for the Defendants.

MELLITZ, J.    These petitions, three in number, have been brought before me as a judge of the Superior Court pursuant to the provisions of § 4 of "An Act Concerning Natural Gas Pipe

Line Companies," approved May 26, 1950. The petitions pray for the determination by a committee of disinterested persons of the damages to the defendants for the taking of certain ease- ments and rights of way sought by the plaintiff over the proper- ties of the defendants. Accompanying each petition is an appli- cation for an order, under § 5 of the act, to permit the plaintiff to enter immediately upon the properties to be taken and devote the same to the uses specified in the petitions.

The defendants have filed in each case a motion to dismiss the application for immediate possession on the ground that the act is in violation of § 1 of the fourteenth amendment to the constitution of the United States and of § 9 of article first of the constitution of Connecticut, in that (1) it "does not limit the power of eminent domain granted to the condemnation of prop- erty, the proposed use of which is, for the benefit of the people of the State of Connecticut"; and (2) "wherein the said Act pro- vides for a deposit by the pipe line company with the court of a sum to be fixed by the court or judge, the said Act does not provide any standard or basis upon which the said court or judge is to establish the amount of such deposit."

To be a valid exercise of the power of eminent domain it is not required that the benefits to be derived therefrom be limited to the residents of Connecticut. As pointed out in the recent decision of the Supreme Court of Errors in *Adams* v. *Greenwich Water Co.,* 138 Conn. 205, a taking of property by eminent domain, if it is for a public use within the state, is a proper exercise of the power although it may also serve to benefit the residents of another state. In the absence of a showing in a particular case to the contrary, it must be assumed that the power of eminent domain granted under the act is to be exercis- ed lawfully for a public use beneficial to the people of Connecti- cut.

With respect to the second point raised in the motions to dismiss, it is manifest that when the legislature provided in § 5 of the act for immediate entry upon property sought to be taken, in advance of a determination by a committee of the amount of the damages, upon the deposit of a sum to be fixed by the court or judge, it intended to provide a source from which an owner would be assured payment of the compensation to which he would eventually be entitled. In *Keller* v. *Bridgeport,* 101 Conn. 669, 675, it was noted that, in a situation where property is to be physically appropriated by a condemning authority be-

fore payment to the owner, provision must be made which will make certain the payment of compensation to the owner. While § 5 does not specify any standard for the amount of the deposit to be required, provision is made for notice and a hearing before the amount is fixed, and it must be assumed that the amount required to be deposited will be entirely adequate to assure payment to the owner of the damages which may ultimately be awarded him. The act and the provisions for immediate entry in § 5 thereof are not vulnerable in the respects charged in the motions to dismiss, and the motions are therefore denied.

The provisions of § 5 are for the most part the same as those of § 7182 of the General Statutes. It may be of interest to note that an identical statute has been in force in the state of New York for many years. N. Y. Condemnation Law, § 24, derived from an earlier statute, Code Civ. Proc. § 3380, the constitutionality of which was upheld in *Matter of Niagara, Lockport & Ontario Power Co.,* 111 App. Div. 686, and *Long Island R. Co. v. Jones,* 151 App. Div. 407.

Section 5 of the act provides that "When . . . it shall appear to the court or judge before whom such proceedings are pending that the public interests will be prejudiced by delay, said court or judge may direct that such corporation be permitted to enter immediately upon the property to be taken and devote it temporarily to the public use specified in said petition upon the deposit with said court of a sum to be fixed by said court or judge, upon notice to the parties of not less than ten days. . . ." The issue presented on the applications for immediate entry is whether delaying such entry will operate to the prejudice of the public interests. The plaintiff is duly chartered for the purpose, among others, of constructing and operating a natural gas pipe line or pipe lines and holds a certificate of public convenience and necessity from the federal power commission issued under the provisions of the Federal Natural Gas Act, authorizing it to construct and operate a natural gas pipe line or pipe lines within the state of Connecticut. Implicit in the issuance of the certificate is a finding of the public need in Connecticut, in the opinion of the federal power commission, of a supply of natural gas which the plaintiff may be in a position to furnish, and the economic feasibility of the project undertaken by the plaintiff to construct a pipe line to serve the potential users of natural gas in Connecticut. The pipe line now in process of construction by the plaintiff begins at Lambertville, N. J., proceeds in a northeasterly direction near Peekskill, N. Y., through Connecti-

cut near Waterbury and Putnam, finally terminating in the Boston area. Various lateral lines are projected in Connecticut to serve potential customers in New Haven, Hartford, Willimantic, Norwich, and New London. The plaintiff has contracted for ninety miles of construction in Connecticut and to the present time has acquired easements in Connecticut for 36.5 miles. The area of its present construction operations extends from the Connecticut River easterly. In the first twenty miles east of the Connecticut River there are ninety-five landowners from whom the plaintiff has acquired eighty-eight easements. The properties of the three defendants are in the town of Andover. The Coleman property lies 12.5 miles east of the Connecticut River, the Lange property 3.5 miles east of the Coleman property, and the Nelson property .5 miles east of the Lange property. All easements from the Connecticut River to the Coleman property have been acquired by the plaintiff, as well as all easements between the Coleman and Lange properties. Between the Lange and Nelson properties only one property intervenes and the plaintiff has acquired a right of way thereover. Successive phases of pipe line construction involve surveying and clearing the land, grading, ditching, hauling and stringing the pipe along the right of way, welding, painting and wrapping the pipe with glass floss, lowering the welded pipe in position, and back filling. A separate crew is required for each successive step, including much heavy machinery and equipment, and to be economically feasible, construction must be continuous, with each crew followed promptly by the succeeding crew. The coating operation requires that it be applied at a high temperature on a relatively warm pipe, making construction most feasible in relatively warm weather. East of the Connecticut River the right of way has been cleared to within 5.6 miles of the Coleman property, the grading is within 6.8 miles, and pipe has been strung along for several miles. Substantial increased costs are involved if the continuity of construction is impeded.

Among the gas producing and distributing companies in Connecticut supplying the needs of Connecticut gas consumers and who are prospective customers of the plaintiff are the Hartford Gas Company, which serves the consumers in seven towns, the New Haven Gaslight Company, which services six towns, and the City of Norwich Gas and Electrical Department, which serves the needs of the town and city of Norwich. The thickly populated areas served by these distributors include household users of gas to the number of more than 130,000, commercial

establishments in excess of 6000, and more than 500 industrial consumers, among them the large defense plants situated in these areas. Representatives of each of these gas producers and distributors have testified that the demands for gas have steadily increased in recent years to the point where expansion of existing facilities is required unless natural gas becomes available as a means of supplying the additional gas needed to prevent curtailment to consumers. The most economical method to increase the distribution capacity of these gas distributors is by a supply of natural gas, the heating value of which is double that of artificial gas. A supply of natural gas would enable the existing gas mains to carry twice the heating value of artificial gas and avoid the necessity of the expenditure of large sums for additions to the mains and expansion of distribution plants. Each of these witnesses testified to the immediacy of their need for natural gas. In Hartford the use of gas for house heating has been restricted because of the lack of the additional supply to furnish it. Greater production facilities are required to satisfy increasing loads and natural gas would increase the distribution facilities substantially, and by the end of the fifth year, more than double present production facilities. As early as 1949, in anticipation that natural gas would become available by this year, a program was embarked upon involving a total cost of $1,375,000, of which over $250,000 has already been expended, to adapt present facilities to receive natural gas, as soon as it becomes available. The present expectation is that natural gas will become available by the spring of 1952. Similarly, in New Haven, to satisfy substantially increased needs, projected plant alterations involving nearly $1,000,000, have been contracted for in anticipation of a natural gas supply by early 1952, which is being relied upon in lieu of large capital expenditures for plant expansion. In Norwich the construction of additional plant facilities, required to meet increased demands, has been deferred in the expectation of the early availability of natural gas.

From the foregoing and other facts established I am satisfied that it fairly appears from the evidence that the early availability of a supply of natural gas will be of subtantial benefit to the public and that, if the plaintiff's construction program is retarded by its failure to obtain the right of entry to the properties of the defendants, there will ensue a delay prejudicial to the public interests. Accordingly, the applications for the right of immediate entry are granted and an order may enter that upon depositing with the clerk of the Superior Court for Tolland

County of the sums hereinafter fixed, the plaintiff may enter immediately upon the properties of the respective respondents and devote the same temporarily to the public use specified in the respective petitions.

With relation to the amounts to be deposited, it is essential that the deposit in each case be of an amount which will protect the defendants so that they may be assured certain payment of the compensation to which they may be found entitled. At the hearing before me the plaintiff introduced no evidence as to the value of the properties of the defendants. Evidence was presented by the defendants as to the value of their respective properties and the claimed damage that will result from the proposed taking. I have concluded that I should accept the suggestion of defendants' counsel as to the amounts to be deposited and accordingly fix as the amounts to be deposited the following:

In the case of George S. Coleman et al, $4,000.00

In the case of George W. Lange, et al. $20,000.00

Except for the motions of the defendants to dismiss the applications for immediate possession, no objection has been raised by the defendants to the petitions for the appointment of a committee to determine the damages to the defendants. It is therefore ordered and adjudged that Hon. George E. Hinman and James P. Mustard, both of Willimantic, and Herbert F. Fisher of Hartford, three disinterested persons be, and they are hereby appointed, a committee; and it is further ordered and adjudged that, after having been duly sworn, they shall give reasonable notice to the respective defendants, shall view the lands and easements and rights of way described in the petitions, hear the evidence, ascertain the value thereof and assess just damages to said respective defendants, and report their doings to the Superior Court for the county of Tolland, in writing.