[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM IN RE APPLICATION FOR IMMEDIATE ENTRY MOTION TO TERMINATE STAY
The Petitioner Iroquois Gas Transmission System, L. P., a Delaware limited partnership, is a "natural gas company" within the meaning of Section 2(a) of the Federal Natural Gas Act,15 U.S.C. § 717a(6), and the holder of a certificate of public convenience and necessity, issued by the Federal Energy Regulatory Commission ("FERC") pursuant to that act, for the construction of a natural gas pipeline from the international border between the United States and Canada, through New York and Connecticut, and across Long Island Sound, to Long Island, New York where it will interconnect with an existing gas transportation system.
The Petitioner Iroquois Gas Transmission System, Inc. of CT Page 120 Connecticut ("Iroquois, Inc.") is a Delaware corporation wholly owned by Iroquois, which acts as Iroquois' agent, specifically with respect to acquisition of the Connecticut portion of the right-of-way. Iroquois, Inc. is a co-holder of the FERC certificate along with Iroquois for this purpose.
This petition is brought pursuant to C.G.S. Section 16-263 et seq. to acquire easement rights by eminent domain, and to gain immediate entry to the property in question. The respondents Candlewood Valley Country Club is the owner of the property over which the easement is sought. Iroquois has been refused permission to enter on the respondent's land to complete necessary preconstruction environmental and land surveys. It seeks immediate entry for this purpose, as well as for the purpose of constructing the pipeline. The gas will be transported to local distribution companies and power generators in the States of New York, Rhode Island, Massachusetts, New Hampshire, New Jersey, and Connecticut. The gas transported by Iroquois will be used for electric generation, cooking, space heating, industrial process energy, and for other purposes. Its fully operational capacity of 422,900 Mcf/d will provide the energy equivalent of 30 million barrels per year of imported oil.
The line is scheduled to be completed by January 1, 1992. To meet this completion date, construction must be underway in Connecticut by June 1, 1991. Delay of the start of construction beyond June 1st would mean that gas to be transported by Iroquois would not be available for the 1991-92 heating season in Connecticut. Connecticut's natural gas companies would be forced to increase their reliance on uneconomic substitutes, to the extent such substitutions are available, greatly increasing their ratepayer's costs; and might even be required to curtail deliveries to their customers. Moreover, any such delay could significantly increase the cost of building the pipeline, and therefore the ultimate cost of transporting the gas.
To begin construction by June 1, 1991, Iroquois must be able to complete its surveys and acquire the right to commence construction now. In this case, the landowner has refused to grant Iroquois even the access necessary to complete the environmental and centerline surveys, which Iroquois must complete before it can refine the location of its right-of-way and complete its construction planning. It is clear that access cannot await a determination of damages in these cases. Moreover, there will not be sufficient time for Iroquois to complete the proceedings for acquiring title by eminent domain to these and other properties which must be condemned, and for a court to determine the damages due, before construction must commence.
The Petitioner accordingly has invoked two state statutes CT Page 121 which provide two independent bases for the immediate relief it seeks — C.G.S. Sec. 16-267 and C.G.S. Sec. 16-50x(c). Each of these statutes authorizes this court, if it appears "that the public interest will be prejudiced by delay" to "determine that said applicant be permitted to enter immediately upon the property to be taken and devote it temporarily to the public use specified in such petition" upon deposit of a sum fixed by the court, to be applied to any assessment of damages which may be made[1]. This deposit is fixed by a preliminary estimate of the value of the property taken. Algonquin Gas Transmission Co. v. Coleman,17 Conn. Sup. 327, 332 (Super.Ct. 1951). (Id.)
The immediate entry right is available both to allow a condemnor access to a property for the purpose of completing surveys necessary to specifically identify the location of a right-of-way to be taken, Northeastern Gas Transmission Co. v. Benedict, 139 Conn. 36, 42, 43 (1952); and to allow it to actually construct the line while the eminent domain proceeding is under way. Algonquin Gas v. Coleman, 17 Conn. Sup. at 330
(1951). Since an appeal from a FERC certificate does not automatically stay its effectiveness, the statutory right of immediate entry is available notwithstanding that the FERC certificate may be subject to a motion for reconsideration or an appeal; only a federal court order staying the effectiveness of the certificate or setting aside the order issuing it will impair the condemnor's ability to resort to the immediate entry remedy, in which case the landowner will be entitled to compensation for damages from any exercise of the temporary rights which has by then occurred. Algonquin Gas Transmission Co. v. North Haven Fair Association, Inc., 20 Conn. Sup. 50 (Super.Ct. 1956).
The Connecticut portion of the Iroquois pipeline will be 24 inches in diameter, and made of one-half inch thick steel. Except for valves, sales meter stations, and some other appurtenant facilities, all of the pipeline facilities will be buried underground. The permanent right-of-way through Connecticut will generally be fifty feet wide. Iroquois will also required temporary construction rights for an additional twenty-five to fifty feet of right-of-way. Construction would involve nine sequential operations: clearing and grading of the right-of-way; trenching; stringing; pipe installation; backfilling; clean up and temporary erosion controls; hydrostatic testing; commissioning activities; and final clean-up and restoration. The full width of the construction right-of-way is necessary to accommodate these activities and to minimize or eliminate off right-of-way damages.
Pipelines can be constructed economically only if work crews can move along the length of a complete right-of-way, to perform their various operations in a smooth, continuous sequence. If the crews cannot move continuously along the right-of-way, but must CT Page 122 skip sections of it, and then return, the company pays a substantial penalty in time and expense.
Implicit in the issuance of FERC's Certification of Public Convenience and Necessity is a finding of public need for a supply of natural gas which the plaintiff is in a position to make available, and the economic feasibility of the project approved. Algonquin Gas Transmission Co. v. Coleman, 17 Conn. Sup. at 329. The Iroquois volumes are urgently needed not just to ameliorate the Northeast's dependence on foreign oil, but also to allow the Connecticut gas utilities to meet the needs of their existing customers. This need is an independently sufficient basis for immediate entry. Algonquin Gas Transmission Co. v. Coleman,17 Conn. Sup. at 330; Algonquin Gas Transmission Co. v. Desmond, No. 30608, Superior Court, New Haven County at Waterbury (March 26, 1966; Sidor, J.).
Further, the need of Iroquois and its shippers to avoid costs from delay and interruption of construction continuity would alone require a grant of immediate entry. Immediate entry will be granted to enable a pipeline company to avoid cost increases associated with delay and to meet contract commitments for the delivery of gas by a stipulated date. Algonquin Gas Transmission Co. v. Coleman, 17 Conn. Sup. at 330; Northeastern Gas Transmission Co. v. Benedict, 139 Conn. 36, 42 (1952); Algonquin Gas Transmission Co. v. Desmond, No. 30608, Superior Court, New Haven County at Waterbury (March 25, 1966; Sidor, J.) Commissioner of Transportation v. V.A.S.T. Resources, 549 N.Y.S.2d 602
(Sup.Ct. 1989[2]); Town of Massena v. Niagara Mohawk Corp.,87 Misc.2d 834, 383 N.Y.S.2d 834 (Sup.Ct. 1976); City of Glen Cove v. Utilities and Industries Corp., 24 App.Div.2d 766,264 N.Y.S.2d 13 (1965) aff'd 17 N.Y.2d 205, 269 N.Y.S.2d 704,216 N.E.2d 701.
Sections 16-263 through 16-268 of the General Statutes were, enacted in 1950 by the passage of 1950 House Bill No. 37, the purpose of which was "to provide an authority and procedure for the condemnation of land necessary for the construction in Connecticut of pipelines and appurtenant facilities of natural gas companies." Id., Statement of Purpose. The Bill's Statement of Purpose further notes that
 [u]nder Federal Law, such companies are granted a right of condemnation, but the exercise of that right so far as the determination of damages is concerned, is confined to the Federal courts where jurisdiction is limited to condemnation involving damages of $3,000.00 or more. As the average damages for a right-of-way over a single piece of property would be less than $3,000.00, it is necessary to make possible the CT Page 123 construction of natural gas pipelines in Connecticut that the State courts be made available.
Accordingly, the legislature granted the right of eminent domain to "any corporation. . ." which holds a certificate of public convenience and necessity issued pursuant to the Federal Natural Gas Act. C.G.S. Section 16-263.
Although the Connecticut act was clearly intended (according to its Statement of Purpose) to apply to any "natural gas company" which held a certificate under the Natural Gas Act and the federal act defines both a "natural gas company" and a "corporation" to include partnerships [15 U.S.C. § 717a(1)(G)] Iroquois was concerned that Section 16-263 might not be construed to apply to it, because it is a limited partnership; and a limited partnership is commonly understood to be distinct from a corporation. Accordingly, Iroquois created Iroquois, Inc., and asked FERC to make Iroquois, Inc. a co-holder of the federal certificate, a request which FERC granted. Iroquois, Inc. is indisputably a corporation and a holder of the FERC certificate, and accordingly, entitled to proceed to exercise the eminent domain power under Section 16-264 and to petition for immediate entry pursuant to Section 16-267.
The same reasons which justify the grant of an order of immediate entry support the issuance of an order pursuant to Section 4046 of the Practice Book, terminating the automatic stay which would otherwise come into effect upon the taking of an appeal because the due administration of justice so requires.
In Northeastern Gas Transmission Co. v. Benedict, 139 Conn. 36, the court affirmed the termination of a stay of an order of immediate entry, finding that it was within the discretion of the court to conclude that the due administration of justice required it. The facts which justified the court's opinion that the due administration of justice required termination of the stay were the same as those which justified the grant of immediate entry: "[t]hat the "public interest would be prejudiced by further delay of the plaintiff in going into possession" and that "insofar as the payment of money damages can compensate the defendants for injuries sustained by reason of the plaintiffs going into possession immediately, they have been amply secured for those damages by surety bonds in amounts agreed to by them." Id. at 36. The facts justifying an order of immediate entry and a termination of stay in this case are much more compelling.
When a motion to terminate a stay of execution is filed before judgment, it may be ruled upon when judgment is entered, thereby avoiding the stay which would otherwise be in effect until the time within which an appeal could be taken had expired. CT Page 124 Practice Book Section 4046. Accordingly, the court has provided in its order granting immediate entry that the petitioner's motion to terminate stay of execution is also granted.
For the reasons stated the application for immediate entry is granted, conditioned upon the petitioner's deposit with the court' of the sum of $92,000.00 which deposit will be applied according to said statutes; it is further ordered that the due administration of justice requires that the execution of this order not be stayed by appeal.
PICKETT, J.